# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: November 10, 2021
Date Decided: December 15, 2021

David E. Wilks, Esquire
Wilks Law LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE  19805

Raymond J. DiCamillo, Esquire
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801

William M. Lafferty, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 N. Market Street, Suite 1600
Wilmington, DE  19801

Daniel B. Rath, Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19899

Richard L. Renck, Esquire
Duane Morris LLP
1201 N. Market Street, Suite 501
Wilmington, DE  19801

John Sensing, Esquire
Potter Anderson & Corroon LLP
1313 N. Market St.
Wilmington, DE  19801

Samuel T. Hirzel, Esquire
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Ave., Suite 200
Wilmington, DE  19801

RE: ***Douglas Altabef, et al. v. Ilan Neugarten et al.,***
Civil Action No. 2021-0117-MTZ

Dear Counsel:

This letter opinion resolves the remaining motions to dismiss that I did not grant at oral argument on November 10, 2021.[1] For the reasons set forth below, I conclude that this Court lacks personal jurisdiction over Rainbow Medical Ltd. ("Rainbow Medical") and Fischer Behar Chen Well Orion & Co. ("Fisher Behar"). Their motions to dismiss are granted.

## I.  BACKGROUND

On Rainbow Medical and Fischer Behar's motions to dismiss (the "Motions"), I draw the following facts from Plaintiffs' amended complaint (the "Amended Complaint") and the documents integral to it.[2] I limit my recital of the facts to those necessary to resolve the pending Motions. In considering those Motions under Court of Chancery Rule 12(b)(2), I "may consider the pleadings, affidavits, and any

---

[1] Docket Item ("D.I.") 139 [hereinafter "Hr'g Tr."].

[2] *See* D.I. 74 [hereinafter "Am. Compl."]; D.I. 78. The capitalized term "Plaintiffs" refers to all named plaintiffs.

discovery of record."[3]  I accept the facts in the Amended Complaint as true, and draw all inferences in favor of Plaintiffs.[4]

## A. Nano-Retina, Its Investors, And Its Financing

Nano-Retina, Inc. ("Nano-Retina" or the "Company") is a Delaware corporation with its principal place of business in Herzliya, Israel.[5]  It develops advanced nanotechnology devices intended to restore functional vision to blind individuals.[6]  Rainbow Medical is an Israeli corporation with a principal place of business in Herzliya, Israel.[7]  Rainbow Medical incorporated Nano-Retina in 2009;[8] under an operational services support agreement (the "Operational Services Agreement"), Rainbow Medical officers and employees provide management services to Nano-Retina for a fee.[9]  Fischer Behar is Nano-Retina's Israeli counsel, and advised Nano-Retina regarding its response to Plaintiffs' books and records

---

[3] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *5 (Del. Ch. July 14, 2008) (citing *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007)).  In relating Plaintiffs' arguments, I cite to briefing where it is unaccompanied by factual support.

[4] *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003).

[5] Am. Compl. ¶ 19.

[6] *Id.* ¶ 3.

[7] *Id.* ¶¶ 4, 24; D.I. 9 ¶¶ 2, 8; D.I. 41.

[8] D.I. 117 at 9 [hereinafter "Ans. Br."]; D.I. 106 Ex. 2, Nano-Retina Certificate of Incorporation.

[9] Am. Compl. ¶¶ 40, 77–78; Am. Compl. Ex. C; *id.* at Ex. A.

demand and certain other transactions at issue.[10]  Fischer Behar also served as counsel to Rainbow Medical.[11]

Nano-Retina has been financed through convertible loan agreements.[12]  In 2012, Plaintiffs invested in Nano-Retina via a convertible loan agreement; in 2014, their debt converted to common stock.[13]  Rainbow Medical also invested in Nano-Retina via convertible loan agreements, and is currently Nano-Retina's controlling stockholder.[14]  Plaintiffs assert several of Nano-Retina's convertible loan agreements had identical conversion terms, but have been inconsistently enforced.[15] Specifically, Plaintiffs assert a 2014 loan between Nano-Retina and Carlyle KFT ("Carlyle") with Rainbow Medical as a signatory (the "Carlyle Loan") was not converted as it should have been under the agreement's terms.[16]  Plaintiffs claim that

---

[10] Am. Compl. ¶¶ 30–32, 101, 113, 123.

[11] *Id.* ¶¶ 8, 30, 113.

[12] Nano-Retina has entered into convertible loan agreements with Plaintiffs, defendants Rainbow Medical, Carlyle KFT, and nonparties.  *Id.* ¶¶ 5, 39, 41, 51–54, 60, 62, 66, 69; *id.* Exs. D, E, F, G, H, I, J, K.

[13] Am. Compl. ¶ 41; Am. Compl. Ex. D § 3.1.

[14] *See* Am. Compl. ¶¶ 24, 44, 51–53, 60, 66; *id.* at 20–21.

[15] *Id.* ¶¶ 125–29.

[16] *Id.* ¶¶ 54, 58, 72–73, 146.

other investments joined to that loan and its conversion terms were converted, and that the disparate application of those terms is a breach of fiduciary duty.[17]

Plaintiffs also take issue with two events in Nano-Retina's recent history. In August 2020, Rainbow Medical and Carlyle presented a term sheet to Nano-Retina's board of directors for a proposed financing (the "Carlyle Financing").[18] The board approved the Carlyle Financing in September 2020, but the proposal was withdrawn in March 2021.[19] In 2020, Tikcro Technologies Ltd. ("Tikcro") "expressed serious interest in exploring" a reverse merger with Nano-Retina (the "Tikcro Proposal").[20] The board rejected the Tikcro Proposal in October 2020.[21]

### B. Plaintiffs Investigate And Litigation Ensues.

On November 23, 2020, Plaintiffs Douglas Altabef and Ardyn Halter (the "220 Plaintiffs") submitted a books and records demand, seeking seventeen categories of documents for eleven purposes including investigating the Carlyle

---

[17] *Id.* ¶¶ 58, 72–73, 103, 125, 128–29, 146; Ans. Br. 63; *id.* Ex. 2 at Interrogatory Answer No. 28 (explaining three other lenders joined the Carlyle Loan according to its terms).

[18] Am. Compl. ¶ 92.

[19] *Id.* ¶ 97; D.I. 106 Ex. 1.

[20] Am. Compl. ¶ 106; D.I. 117, Affidavit of Jeffrey Grossman Pursuant to 10 *Del. C.* § 3927 in Support of Plaintiffs' Omnibus Answering Brief in Opposition to Defendants['] Motion to Dismiss ¶¶ 6–7.

[21] Am. Compl. ¶¶ 109–11.

Loan, the Carlyle Financing, and the Tikcro Proposal.[22] On December 14, the 220

Plaintiffs filed a books and records action in this Court pursuant to 8 *Del. C.* § 220

(the "220 Action").[23] Represented by Delaware counsel, Nano-Retina produced

documents in response (the "220 Production").[24] Fischer Behar communicated with

the 220 Plaintiffs' Delaware counsel "and took positions on Delaware law" to

facilitate Nano-Retina's 220 Production.[25]

The 220 Plaintiffs requested an affidavit from Nano-Retina certifying the

completeness of the Company's 220 Production.[26] Defendant Yossi Cohen signed

the affidavit as "the Chief Financial Officer of Nano-Retina, Inc.," and Fischer Behar

witnessed the affidavit.[27] Cohen is Rainbow Medical's CFO and provides CFO

services to Nano-Retina under the Operational Services Agreement, but is not

---

[22] Complaint, Ex. A, *Altabef v. Nano-Retina, Inc.*, C.A. No. 2020-1053-MTZ (Del. Ch.). Citations to that docket are styled "220 Action D.I. —". These filings can be considered under D.R.E. 202(d)(1)(C).

[23] Am. Compl. ¶ 10; 220 Action D.I. 1.

[24] Am. Compl. ¶¶ 10, 31, 120; *see also* Ans. Br. Ex. 7, [hereinafter "Cohen Aff."].

[25] Am. Compl. ¶¶ 119–20.

[26] *Id.* ¶ 121; Cohen Aff. ¶ 1.

[27] Am. Compl. ¶¶ 122–23; Cohen Aff. ¶¶ 1–2.

formally Nano-Retina's CFO.[28]   Assured by the affidavit, the 220 Plaintiffs

dismissed the 220 Action on February 5, 2021.[29]

On February 9, Plaintiffs initiated this plenary action.[30]   Plaintiffs allege

Nano-Retina:  (i) did not enforce the Carlyle Loan and other loans; (ii) wrongly

authorized payments under the Operational Services Agreement; (iii) wrongly

retained Fischer Behar; (iv) wrongly approved the now-withdrawn Carlyle

Financing; and (v) did not adequately consider the Tikcro Proposal.[31]   Rainbow

Medical, Carl Zeiss AG, Fischer Behar, and Carlyle moved to dismiss Plaintiffs'

initial complaint for lack of personal jurisdiction.[32]

---

[28] Ans. Br. 30 n.8 ("In responding to Interrogatories, Mr. Cohen contends that he 'provides CFO services to Nano Retina as part of the Operational Services Support Agreement' and 'is not employed by Nano Retina.'" (quoting Ans. Br. Ex. 2 at Interrogatory Answer No. 42)); Am. Compl. Ex. C at Ex. A ("Subject to the terms and conditions of the Operational Support Services Agreement, during the Operational Support Term the Company shall receive from Rainbow the following services: . . . ii.  financial services (provided mainly by Rainbow's CFO)[.]"); D.I. 84, Defendants Ilan Neugarten, Yossi Gross, Boaz Laor and Yossi Cohen's Answer to Verified Amended Complaint, ¶¶ 23, 26, 52, 122 (denying Cohen is Nano-Retina's CFO).

[29] 220 Action D.I. 6.

[30] D.I. 1 [hereinafter "Compl."].

[31] *Id.* ¶ 9; *see also* Am. Compl. ¶ 9.

[32] D.I. 55; D.I. 56; D.I. 59; D.I. 68; D.I. 71.

On June 16, 2021, Plaintiffs filed an Amended Complaint, adding Carl Zeiss Venture Beteilingungsgesellschaft mbH ("Carl Zeiss Venture") as a defendant.[33] Plaintiffs also added allegations accusing Cohen, Rainbow Medical, Fischer Behar, Carlyle, and Ki Corporation Limited ("Ki") of conspiracy to cover up the failure to convert the Carlyle Loan withholding from the 220 Production, or destroying, documents associated with the loans that joined the Carlyle Loan.[34]

Rainbow Medical, Carl Zeiss AG, Carl Zeiss Venture, Fischer Behar, Carlyle, and Ki (collectively, the "Entity Defendants") all moved to dismiss for lack of personal jurisdiction.[35] The parties briefed the Entity Defendants' motions, and the Court heard oral argument on November 10, 2021.[36] I granted the motions by Carlyle, Ki, Carl Zeiss AG, and Carl Zeiss Venture, and took Rainbow Medical and Fischer Behar's Motions under advisement.[37]

---

[33] *See generally* Am. Compl.

[34] *See* Am. Compl. ¶¶ 125–29, 147, 191, 206.

[35] D.I. 86; D.I. 87; D.I. 89; D.I. 90.

[36] D.I. 106; D.I. 107; D.I. 108; D.I. 112; Ans. Br.; D.I. 123; D.I. 124; D.I. 125; D.I. 127; D.I. 131; Hr'g Tr.

[37] Hr'g Tr. 139–40.

## II.   ANALYSIS

Courts can only adjudicate cases in which they have personal jurisdiction over the parties.[38]   "Because a motion under Rule 12(b)(2) presents factual and legal questions, a court cannot grant it 'simply by accepting the well pleaded allegations of the complaint as true, because the pleader has no obligation to plead facts that show the amenability of the defendant to service of process.'"[39]   When a defendant moves to dismiss under Rule 12(b)(2), the plaintiffs have the burden to show a prima facie case of personal jurisdiction over a nonresident defendant by demonstrating "specific facts," and not "rely[ing] on mere conclusory assertions."[40]   "While such a showing is frequently made on the basis of documentary evidence and affidavits, and sometimes deposition or live testimony, in appropriate circumstances, a plaintiff also may make the necessary prima facie showing using only the facts alleged in the complaint."[41]

---

[38] *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 129 (Del. 2016).

[39] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *2 (Del. Ch. Sept. 18, 2019) (quoting *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1131 (Del. Ch. 2008)).

[40] *Mobile Diagnostic Gp. Hldgs., LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009) (citing *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 (Del. 2005), and *Hart Hldg. Co. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991), and *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *5 (Del. Ch. July 14, 2008)).

[41] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 3.02 (2021) (internal quotation marks omitted) (quoting

State courts can exercise personal jurisdiction over a nonresident entity defendant by either general jurisdiction or specific jurisdiction.[42] In both cases, Delaware courts apply a two-prong analysis to determine whether plaintiffs have satisfied their burden.[43] First, courts consider whether the defendant has sufficient contacts for jurisdiction in view of Delaware's long-arm statute, 10 *Del. C.* § 3104.[44] "Second, [courts] must 'evaluate whether subjecting the nonresident to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment (the so-called 'minimum contacts' requirement).'"[45]

### A. This Court Does Not Have Personal Jurisdiction Over Rainbow Medical.

Plaintiffs' Amended Complaint includes a single paragraph explaining why this Court has personal jurisdiction over Rainbow Medical:

*Canadian Com. Workers Indus. Pension Plan v. Alden*, 2006 WL 456786, at *11 n.93 (Del. Ch. Feb. 22, 2006), and citing *N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 2006 WL 2588971, at *6 n.63 (Del. Ch. Sept. 1, 2006), *aff'd*, 930 A.2d 92 (Del. 2007)).

[42] *Genuine Parts*, 137 A.3d at 129–30.

[43] *Mobile Diagnostic*, 972 A.2d at 802.

[44] *Id.* at 803; *Genuine Parts*, 137 A.3d at 127 (noting that in the circumstance where Delaware cannot exercise general jurisdiction over a foreign corporation, the analysis turns to specific jurisdiction under the long-arm statute).

[45] *Mobile Diagnostic*, 972 A.2d at 803 (quoting *AeroGlobal*, 871 A.2d at 438).

Defendant Rainbow Medical is a company organized under the laws of Israel. Rainbow Medical is the largest stockholder of Nano-Retina, holds a majority of the seats on the Nano-Retina board, shares key officers with the Company and, together with its sister organizations in the Kirsh web of entities, Carlyle and Ki Corp., controls Nano-Retina. Rainbow Medical filed Nano-Retina's certificate of incorporation in Delaware (likely with the assistance of Fischer Behar) and, according to the Company's financial statements, claims Nano-Retina as a "subsidiary." By virtue of the foregoing, Rainbow Medical is the controlling stockholder of Nano-Retina and this Court can exercise jurisdiction over Rainbow Medical under 10 *Del. C.* § 3104 and the alter ego/conspiracy theory of jurisdiction.[46]

Plaintiffs go on to allege a conspiracy among several defendants, including Rainbow Medical and Fischer Behar, to withhold documents in the 220 Production as a means to cover up prior breaches of fiduciary duty.[47] In briefing, Plaintiffs argue the 220 Production is a Delaware act that supports specific jurisdiction.[48] Plaintiffs also contend Rainbow Medical is the alter ego of Nano-Retina, a Delaware corporation, and therefore this Court can properly exercise personal jurisdiction over it.[49]

Plaintiffs' answering brief in opposition to the Entity Defendants' motions (the "Answering Brief") developed additional theories. It introduces Rainbow

---

[46] Am. Compl. ¶ 24.

[47] Hr'g Tr. 38–39; Am. Compl. ¶¶ 125–29.

[48] Ans. Br. 47, 49–50, 61, 71–72.

[49] *Id.* 68–72.

Medical's incorporation of Nano-Retina as another Delaware act supporting jurisdiction.[50]  Plaintiffs also argue for the first time in briefing that this Court has general jurisdiction over Rainbow Medical, "a holding company whose business is to form, incorporate, control and operate Delaware companies."[51]  Each of Plaintiffs' theories fails.

### 1.        This Court Does Not Have General Jurisdiction Over Rainbow Medical.

General jurisdiction "grants authority to a state's courts to 'assert[] jurisdiction over a nonresident defendant on the basis of wholly unrelated contacts with the forum.'"[52]  In *Daimler AG v. Bauman*, the United States Supreme Court explained that courts can only exercise general jurisdiction over an entity defendant if the entity has one of a "limited set of affiliations with [the] forum [to] render [the] defendant amenable to all-purpose jurisdiction."[53]  Three forms of affiliation subject an entity defendant to general jurisdiction:  (i) it is incorporated in the forum; (ii) it has its principal place of business in the forum; or (iii) its forum contacts "are so

---

[50] Ans. Br. 9, 37–42.

[51] *Id.* ii, 36–46.

[52] *Genuine Parts*, 137 A.3d at 129 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 426 (1984) (Brennan, J., dissenting)).

[53] 571 U.S. 117, 137 (2014).

continuous and systematic as to render [it] essentially at home" there.[54] Rainbow

Medical is not incorporated in Delaware and does not have its principal place of

business here; it is an Israeli corporation that operates in Israel.[55] Recognizing this,

Plaintiffs rely on the third *Daimler* theory to assert general jurisdiction on the

grounds that Rainbow Medical is effectively at home in Delaware.[56]

---

[54] *Id.* at 139 (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)); *iBio, Inc. v. Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V.*, 2018 WL 6493503, at *2 (Del. Ch. Dec. 10, 2018) ("State courts exercise general jurisdiction over a defendant corporation when the corporation is incorporated in or has its principal place of business in that state." (citing *Daimler*, 571 U.S. at 137 and *Genuine Parts*, 137 A.3d at 135)); *In re Talc Prod. Liab. Litig.*, 2018 WL 4340012, at *5 (Del. Super. Sept. 10, 2018) ("The 'paradigmatic' forum for general jurisdiction is the place of incorporation or the principal place of business.").

[55] Am. Compl. ¶ 24; D.I. 9 ¶¶ 2, 8; D.I. 41; D.I. 106 at 3.

[56] In pressing general jurisdiction, Plaintiffs invoke 10 *Del. C.* § 3104(c)(4). Ans. Br. 37. Indeed, that provision has been canonized as a general jurisdiction statute, and often appears in the first step of Delaware's two-step personal jurisdiction analysis. *See, e.g.*, *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *Metro. Life Ins. Co. v. Tremont Gp. Hldgs., Inc.*, 2012 WL 6632681, at *5 (Del. Ch. Dec. 20, 2012); *Comput. People, Inc. v. Best Int'l Gp., Inc.*, 1999 WL 288119, at *7 (Del. Ch. Apr. 27, 1999); *Red Sail Easter Ltd. P'rs, L.P. v. Radio City Music Hall Prods., Inc.*, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991); *Ali v. Beechcraft Corp.*, 2014 WL 3706619, at *2 (Del. Super. June 30, 2014) ("Where a company solicits business to the country as a whole, has made sales in Delaware deriving substantial revenue, and conducted this activity for over a decade, section 3104(c)(4) is satisfied."). Due process limitations, like those established in *Daimler*, supersede and limit Section 3104's language. *Rosado v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 3887880, at *2 (Del. Super. July 9, 2020) ("But the long arm statute is only as broad as the Due Process Clause will allow it to be, and cases interpreting the constitutional reach of personal jurisdiction supersede conflicting language in the long arm statute." (citing *Genuine Parts*, 137 A.3d

In *Genuine Parts Co. v. Cepec*, the Delaware Supreme Court examined *Daimler*'s discussion of this third avenue to general jurisdiction, which highlighted *Perkins v. Benguet Consolidated Mining Co.* as "the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum."[57] The defendant in *Perkins* was a company incorporated under the laws of the Philippines.[58] "[The defendant] ceased its . . . operations during the Japanese occupation of the Philippines in World War II; its president moved to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities."[59] The United States Supreme Court held the Ohio courts could exercise general jurisdiction over the defendant without offending due process because Ohio was the corporation's principal, if temporary, place of business.[60] This "exceptional case" for exposing a foreign corporation to suit based on unrelated contacts requires a foreign corporation's "affiliations with the State [to be] so continuous and

---

123)). I therefore focus on *Daimler*'s "essentially at home" standard for minimum contacts and due process.

[57] *Genuine Parts*, 137 A.3d at 135 (internal quotation marks omitted) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) and quoting *Daimler*, 571 U.S. at 129).

[58] *Daimler*, 571 U.S. at 129 (citing *Perkins*, 342 U.S. at 448).

[59] *Id.*

[60] *Id.*

systematic as to render [it] essentially at home in the forum State."[61]  It is a high bar

that requires far more than doing business in the State.[62]  And from a practical

perspective, "[a] corporation that operates in many places can scarcely be deemed at

home in all of them."[63]

In attempting to clear *Daimler*'s high bar, Plaintiffs argue Rainbow Medical

is at home in Delaware based on two Delaware cases that preceded *Daimler*.[64]

Plaintiffs argue that under these cases, Rainbow Medical is "at home" in Delaware

because it directly or indirectly incorporated seven Delaware entities over twelve

years.[65]  Plaintiffs assert "[t]he formation and operation of multiple Delaware

---

[61] *Genuine Parts*, 137 A.3d at 135 (quoting *Daimler*, 571 U.S. at 139).

[62] *See id.* at 130 ("That is, merely doing business in a state was a basis for general jurisdiction there.  But as we will later discuss, two recent decisions of the U.S. Supreme Court [*Goodyear* and *Daimler*] established that that is no longer enough."); *Hedger v. Medline Indus., Inc.*, 2017 WL 396770, at *6 (Del. Super. Jan. 27, 2017) ("The exercise of general jurisdiction over a foreign corporation solely on the basis of 'doing business,' without more, is constitutionally insufficient to the point of being frivolous."); *In re Asbestos Litig.*, 2016 WL 7404547, at *4 (Del. Super. Oct. 17, 2016) (rejecting the "doing business tests," and remarking "Plaintiffs underestimate how rigorous the [*Daimler*] test actually is").

[63] *Genuine Parts*, 137 A.3d at 136 (quoting *Daimler*, 571 U.S. at 762 n.20).

[64] Ans. Br. 37–38.

[65] *Id.* 9.

entities . . . is a recognized persistent course of conduct in Delaware sufficient to support general jurisdiction."[66]

In *ALTECH Industries, Inc. v. Al Tech Specialty Steel Corp.*, the United States District Court for the District of Delaware held that a defendant holding company engaged in a "persistent course of conduct in Delaware" where the "vast majority of [the defendant's] 82 subsidiaries [were] Delaware corporations formed, merged, or acquired under Delaware law" and the defendant, either personally or through an agent, "utilized the benefits of the Delaware corporation law" through merging its Delaware subsidiaries and filing various corporate documents in Delaware.[67] Specifically, the defendant: (i) "incorporated at l[e]ast 35 subsidiaries in Delaware" over the course of seven years, (ii) amended certificates of incorporation for "at least 5 others," (iii) "regularly employ[ed] the Delaware corporation law to merge its subsidiaries," (iv) "through its agent, Corporation Trust Company, has filed and recorded all documents in Delaware necessary to consummate the mergers," and (v) "retained Delaware counsel to examine and advise with respect to the Delaware take-over statute."[68] The District Court found "[t]hese activities considered in their

---

[66] *Id.* 37 (internal quotation marks omitted) (citing 10 *Del. C.* § 3104(c)(4)).

[67] 542 F. Supp. 53, 55–56 (D. Del. 1982).

[68] *Id.*

totality," under the then-prevailing standard, "comprise[d] a persistent course of conduct in Delaware [as] required by Section 3104(c)(4)."[69]

In *Saltz v. Brantley Management Co.*, Ohio resident and "serial incorporator" Robert Pinkas had a "decades long business" of forming nearly two dozen companies in Delaware.[70] Two of those entities, for which he served as a board member, managed a series of private equity investment funds.[71] "Pinkas has created several of these investment funds, and he has made several payments to Delaware's Secretary of State and the CT Trust Corporation to create these entities and to keep them alive."[72] The defendant propped up each fund with two newly-formed Delaware limited partnerships, with a third Delaware entity serving as a general partner.[73] The Superior Court held the defendant's decades-long scheme of forming Delaware companies and using them "to manage his other Delaware companies'

---

[69] *Id.* at 56; *id.* ("[T]he conduct and connection of GATX with Delaware is such that it should reasonably have anticipated that it might have to defend in Delaware an action in which it is charged with directing and controlling its subsidiary defendant Al Tech, a Delaware corporation, with infringing plaintiff's trade name." (citing *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980))).

[70] *Saltz v. Brantley Mgmt. Co.*, 2011 WL 2535802, at *1 (Del. Super. May 31, 2011), *aff'd on other grounds*, 36 A.3d 348 (Del. 2012).

[71] *Id.* at *1, *4.

[72] *Id.* at *1.

[73] *Id.*

investments and generate fees" was "a persistent course of conduct through which the non-resident defendant create[d] a general presence in Delaware" that subjected the defendant to the Court's general personal jurisdiction.[74]

Plaintiffs make their "at home" argument for the first time in their Answering Brief, accompanied by exhibits but not by any sworn affidavits.[75] Plaintiffs have failed to demonstrate Rainbow Medical is "effectively at home" in Delaware. Rainbow Medical did not, as in *Daimler*'s paradigmatic example of *Perkins*, effectively make a new home in a location other than its principal place of business.[76] On the contrary, Rainbow Medical keeps an Israeli office and oversees its investments and the activities of its portfolio companies from Israel.[77] Rainbow Medical's Israeli personnel manage its investments under agreements like the

---

[74] *Id.* at \*3–4; *see also id.* at \*4 ("After forming companies in Delaware for decades, which includes making payments to the State and availing himself of its law and protections, [the defendant] could have reasonably anticipated litigating here.").

[75] The only affidavit Plaintiffs submitted was the Affidavit of Jeffrey Grossman Pursuant to 10 *Del. C.* § 3927 in support of Plaintiffs' Answering Brief In Opposition to Defendants' Motions to Dismiss regarding the details surrounding Tikcro's interest in Nano-Retina and Nano-Retina's response. D.I. 171.

[76] *Daimler*, 571 U.S. at 129 (citing *Perkins*, 342 U.S. at 448).

[77] D.I. 9 ¶ 2 (listing Rainbow Medical's office as 85 Medinat Hayehuidm St. Business Park, G Building, 8th Floor, Herzliya Pituach, Israel); D.I. 41 (same); D.I. 106 Ex. 2, Nano-Retina Certificate of Incorporation (listing Rainbow Medical's address as "85 Medinat Hayehuidm [S]treet, Herzliya, Israel"); Ans. Br. Ex. 9 (listing Rainbow Medical's office on its letterhead as Business Park, 85 Medinat Hayehuidm St., P.O. Box 4100, Herzliya 46766); *id.* Ex. 20 (same).

Operational Services Agreement and the "Inter-Company Services Agreement," through which Rainbow Medical provides research, development, and operational support services to Nano-Retina and other portfolio companies.[78] Rainbow Medical is at home in Israel, and so cannot be at home in Delaware.[79]

Focusing on *ALTECH* and *Saltz*, their constitutional analyses predate *Daimler*'s narrower standard and recognition that the "essentially at home" theory is for the "exceptional case." *Saltz* asked only whether the defendant had "purposefully established 'minimum contacts,'" and *ALTECH* asked only if a particular defendant "should reasonably have anticipated" defending a particular action.[80] Both metrics are more lax than the *Daimler* standard, which requires nonresident defendants to have affiliations with a forum that are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State."[81]

---

[78] *Compare* Am. Compl. ¶¶ 38, 40 (stating Rainbow Medical entered into an Inter-Company Services Agreement and the Operational Services Agreement with Nano-Retina), *with ALTECH*, 542 F. Supp. at 54 (describing defendant GATX as "a holding company with various subsidiaries"). *See also* Am. Compl. Exs. A, C.

[79] *Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

[80] *Saltz*, 2011 WL 2535802, at *4; *ALTECH*, 542 F. Supp. at 56.

[81] *Daimler*, 571 U.S. at 138–39 & n.19 (citing *Goodyear*, 564 U.S. at 919); *Genuine Parts*, 137 A.3d at 135.

Even assuming *ALTECH* and *Saltz* remain good law, Plaintiffs have failed to show that Rainbow Medical resembles the defendants in those cases. When evaluating general jurisdiction over a defendant with portfolio companies incorporated in different fora, Delaware courts have considered the proportion of entities in Delaware as compared to other jurisdictions.[82] Plaintiffs point to seven of Rainbow Medical's portfolio companies.[83] Two of those were incorporated before Rainbow Medical existed, and so their incorporation cannot be attributed to Rainbow Medical.[84] The five Delaware entities Rainbow Medical formed represent a minority

---

[82] *See, e.g.*, *ALTECH*, 542 F. Supp. at 55–56 (finding general jurisdiction over GATX after considering a totality of GATX's business activities including that "[a] vast majority of its 82 subsidiaries are Delaware corporations formed, merged, or acquired under Delaware law"); *In re Talc Prod. Liab. Litig.*, 2018 WL 4340012, at *6 (Del. Super. Sept. 10, 2018) ("Nor can the Court agree that Johnson & Johnson's creation of other subsidiaries in Delaware, unrelated to this lawsuit, somehow infects Johnson & Johnson and its non-Delaware subsidiaries with general jurisdiction in Delaware. General jurisdiction is heavily related to how the defendant has chosen to organize itself and where it has chosen for its principal place of business. Other Defendants named in the caption chose to organize in Delaware, JNJ did not."). *But see Saltz*, 2011 WL 2535802, at *4 ("Pinkas points to his overwhelming contacts with Ohio, but they are not a counterweight to his repeated contacts with Delaware. After forming companies in Delaware for decades, which includes making payments to the State and availing himself of its laws and protections, Pinkas could have reasonably anticipated litigating here.").

[83] Ans. Br. 9, 39–46, 93.

[84] *Id.* 9, 42–46. A demonstrative Rainbow Medical's counsel used at oral argument, which is not on the docket, supplements Plaintiffs' chart of Rainbow Medical's Delaware-based portfolio companies on page nine of their Answering Brief by adding the dates that the companies were dissolved or voided [hereinafter "Demonstrative 1"]. Hr'g Tr. 10–11.

of Rainbow Medical's investments, which are primarily in Israel.[85]  Two of these

Delaware entities were voided and dissolved in 2013 and 2015, respectively, thereby

leaving only three remaining channels of contact between Rainbow Medical and

Delaware.[86]  These three corporations stand in contrast to the investment fund

---

[85] D.I. 126, Transmittal Declaration of Michael J. Slobom, Jr. in Support of Defendant Rainbow Medical Ltd.'s Reply Brief in Support of Motion to Dismiss Verified Amended Complaint, Ex. A (showing as of December 31, 2016, that two out of Rainbow Medical's then-twelve portfolio companies, Vascular Dynamics, Inc. and Nano-Retina, are entities it incorporated in Delaware); Ans. Br. Ex. 9 (showing as of March 26, 2021, that two out of Rainbow Medical's eight portfolio companies, Vascular Dynamics, Inc. and Nano-Retina, are entities it incorporated in Delaware); *Id.* Ex 8, Vascular Dynamics, Inc.'s Delaware Certificate of Incorporation; Am. Compl. ¶ 19 ("Nominal Defendant Nano-Retina is a Delaware corporation . . . .").

Further, Rainbow Medical created these five Delaware entities thirteen, twelve, and three years before Plaintiffs filed suit; that time period may be overly expansive to support general jurisdiction today.  "The Supreme Court still never has spoken on the issue of determining the proper timeframe for the defendant's contacts with the forum, although the timeframe for the analysis in *Helicopteros* was seven years."  4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.5 (4th ed. 2021) (formatting added) (citing *Helicopteros*, 466 U.S. at 409–11); *id.* ("First, it must be determined whether contacts sufficient for general jurisdiction must exist at the time the claim accrues, or at the time the lawsuit is filed.  After answering that, the court must determine how far back from either the accrual or filing of the claim they will look; most courts use a 'reasonable time' standard yielding timeframes of roughly three to seven years." (collecting sources)).  *But see Comput. People*, 1999 WL 288119, at *7 ("The difficulty, however, is that to establish general jurisdiction under subsection (c)(4), the defendant must have *current* contacts with the forum state."); *id.* at *7 n.21 (emphasizing the present tense of the verbs in Section 3104(c)(4)).

[86] Demonstrative 1. *Cf. Saltz*, 2011 WL 2535802, at *1, *4 (finding defendant engaged in a persistent course of conduct in Delaware by, among other things, making "payments to the Delaware Secretary of State" and "availing himself of [Delaware's] laws and protections").

scheme built on a scaffold of twenty-two Delaware entities in *Saltz* or the thirty-five entities in *ALTECH*.[87] Incorporating five discrete Delaware portfolio companies, managed from Israel alongside other ventures in Israel, does not rise to the level of a "persistent course of conduct" to render Rainbow Medical "essentially at home" in Delaware.[88]

Rainbow Medical is not "an exceptional case" with "continuous and systematic" Delaware affiliations that make it at home here, despite its foreign incorporation and principal place of business.[89] Plaintiffs have failed to show a prima facie case of general jurisdiction.

---

[87] *Saltz*, 2011 WL 2535802, at *1; *ALTECH*, 542 F. Supp. at 56.

[88] *See Saltz*, 2011 WL 2535802, at *1, *4 (finding an individual Ohio-based defendant was essentially "at home" for the purposes of general personal jurisdiction because he had engaged in a "persistent course of conduct" in Delaware by forming "at least 22 companies in Delaware[,] . . . serv[ing] on the boards of two of them," and "using those companies to manage his other Delaware companies' investments and generate fees" in a decades' long investment fund scheme); *Conn. Gen. Life Ins. Co. v. Pinkas*, 2011 WL 5222796, at *3 (Del. Ch. Oct. 28, 2011) (distinguishing *Saltz* where an individual defendant participated in the formation of only one Delaware entity but stating that had the defendant "taken a more active role in forming multiple Delaware entities, the result of this analysis might be different").

[89] *Daimler*, 571 U.S. at 139 & n.19 (citing *Goodyear*, 564 U.S. at 919 and *Perkins*, 342 U.S. at 448).

### 2. This Court Does Not Have Specific Jurisdiction Over Rainbow Medical.

Plaintiffs also assert this Court has specific jurisdiction over Rainbow Medical. Plaintiffs argue Rainbow Medical was part of a conspiracy that affords specific jurisdiction. Alternatively, Plaintiffs claim this Court can exercise specific jurisdiction over Rainbow Medical under alter ego and ancillary jurisdiction theories.

To establish jurisdiction via a conspiracy, Plaintiffs must make a factual showing for each of the following five elements: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in Delaware; (4) the defendant knew or had reason to know of the Delaware act or that the non-Delaware acts would have an effect in Delaware; and (5) the act in, or effect on, Delaware was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[90] A plaintiff

---

[90] *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982) (noting conspiracy jurisdiction is "a strict test" that applies if the plaintiff makes a "factual showing" of required elements); *Lacey v. Mota-Velasco*, 2020 WL 5902590, at *6 (Del. Ch. Oct. 6, 2020) ("Because the test runs the risk of expanding jurisdiction to encompass defendants who would otherwise be beyond the reach of the forum, the test is construed narrowly, requiring factual proof of each of the five elements."); *Hartsel v. Vanguard Gp., Inc.*, 2011 WL 2421003, at *10 (Del. Ch. June 15, 2011) ("Delaware courts construe this test narrowly and require a plaintiff to assert specific facts, not conclusory allegations, as to each element."), *aff'd*, 38 A.3d 1254 (Del. 2012); *Newspan, Inc. v. Hearthstone Funding*

properly alleges a conspiracy by asserting the existence of: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds between or among such persons relating to the object or course of action; (4) one or more unlawful acts; and (5) damages as a proximate result thereof."[91]

Specific jurisdiction requires that the claim arise out of a Delaware act.[92] A conspiracy is not an independent jurisdictional hook: there must still be an anchoring Delaware act.[93] "[T]he 'conspiracy theory' merely provides a framework with which to analyze a foreign defendant's contacts with Delaware."[94]

---

*Corp.*, 1994 WL 198721, at *7 (Del. Ch. May 10, 1994) ("[A]ll of [the five elements] must be satisfied before a Delaware court may exercise personal jurisdiction.").

[91] *Lake Treasure Hldgs., Ltd. v. Foundry Hill GP LLC*, 2013 WL 6184066, at *3 (Del. Ch. Nov. 21, 2013) (internal quotation marks and citations omitted).

[92] *Boone*, 724 A.2d at 1155 ("Specific jurisdiction is at issue when the plaintiff's claims arise out of acts or omissions that take place in Delaware."); *Ruggiero*, 948 A.2d at 1133 ("[T]he plaintiffs must show that the Individual Defendants engaged in some Delaware-directed conduct outlined in 10 *Del. C.* § 3104 in order to obtain personal jurisdiction over the Individual Defendants.").

[93] *Istituto Bancario*, 449 A.2d at 225 ("We therefore hold that a conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: . . . (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state . . . ."); *see also LeCroy Corp. v. Hallberg*, 2009 WL 3233149, at *6 (Del. Ch. Oct. 7, 2009) (explaining "[Section] 3104(c)(3) of the Delaware long arm statute, [] requires a showing of an act that '[c]auses tortious injury in the State by an act or omission in this State'"); *Hercules Inc. v. Leu Tr. & Banking (Bahamas) Ltd.*, 611 A.2d 476, 482 n.6 (Del. 1992) ("We do not view the conspiracy as an independent jurisdictional basis, nor do we simply attribute the acts of one conspirator to another for purposes to the due process analysis.").

[94] *Hercules*, 611 A.2d 476, 482 n.6.

> In order to harmonize the conspiracy theory of jurisdiction with the United States Supreme Court's restructuring of personal jurisdiction, we must presume that the requirement that the conspiracy accomplish a "substantial act or effect" in the forum correlates with the Supreme Court's mandate that the defendant engage in forum-related conduct that is directly related to the specific claims at issue in the lawsuit.[95]

Delaware's long-arm statute identifies several potential such acts:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State; [or]
>       . . .
> (3) Causes tortious injury in the State by an act or omission in this State[.][96]

Section 3104(c)'s "arising from" language "requires that the defendant's act set in motion a series of events which form the basis for the cause of action before the

---

[95] *In re Talc Prod. Liab. Litig.*, 2018 WL 4340012, at *9.

[96] 10 *Del. C.* §§ 3104(c)(1), (3).

court."[97] There must be a nexus between the conspiracy and the claim to allow this Court to exercise personal jurisdiction over an out-of-state defendant.[98]

Plaintiffs point to two Delaware acts by Rainbow Medical to anchor their conspiracy theory of personal jurisdiction: Nano-Retina's incorporation, and the 220 Production. Rainbow Medical incorporated Nano-Retina in 2009, three years before Plaintiffs invested and five years before they were stockholders.[99] Incorporation may be a jurisdictionally significant act if it is part of a wrongful scheme, but Plaintiffs do not allege that.[100] There is no nexus between Nano-Retina's 2009 incorporation and any of Plaintiffs' claims.

---

[97] *LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2017 WL 3912632, at *5 (Del. Ch. Sept. 7, 2017) (internal quotation marks omitted) (quoting *Microsoft Corp. v. Vadem, Ltd.*, 2012 WL 1564155, at *7 (Del. Ch. Apr. 27, 2012)); *see also Lone Pine Res., LP v. Dickey*, 2021 WL 2311954, at *5 (Del. Ch. June 7, 2021); *Microsoft Corp. v. Amphus, Inc.*, 2013 WL 5899003, at *11 (Del. Ch. Oct. 31, 2013) ("Section 3104 requires claims to 'arise from,' not merely be 'related to,' conduct in Delaware.").

[98] *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1024 (Del. 2012) ("Under the 'conspiracy theory' of personal jurisdiction, a plaintiff must allege facts from which one can infer that a foreign defendant knew or should have known that the conspiracy would have a Delaware nexus.").

[99] Demonstrative 1; Am. Compl. ¶ 41; Am. Compl. Ex. D; *id.* § 3.1; *see also* Hr'g Tr. 33.

[100] 10 *Del. C.* § 3104(c)(1); *see, e.g.*, *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *8 (Del. Ch. Dec. 1, 2009) ("A single act of incorporation in Delaware, if done as part of a wrongful scheme, will suffice to confer personal jurisdiction over the nonresident defendants responsible for the scheme."); *Pinkas*, 2011 WL 5222706, at *2 ("[F]ormation of a Delaware entity, without more, does not create a basis for jurisdiction in Delaware."); *Lisa, S.A. v. Mayorga*, 2009 WL, 1846308, at *6 (Del. Ch. Mar. 16, 2009) (holding incorporation of Delaware entities was not a basis for jurisdiction where "[t]he

Plaintiffs' Answering Brief also asserted the deficient 220 Production was a jurisdictionally significant act under Section 3104(c)(1).[101] In considering this argument, I first assume the 220 Production is, indeed, a Delaware act.[102] I will also assume for the purposes of this analysis only that the 220 Production was deficient and should have included the missing loan documents.[103] Even with these two favorable assumptions, Nano-Retina's 220 Production is not a jurisdictionally significant act that can anchor conspiracy jurisdiction over Rainbow Medical.

First, Plaintiffs attempt to impute Nano-Retina's 220 Production to its foreign stockholder, Rainbow Medical. (Readers should recall that Nano-Retina is the victim of the conspiracy, not a conspirator; Plaintiffs must impute Nano-Retina's 220 Production to a conspirator in order for the 220 Production to anchor conspiracy jurisdiction.) The Delaware long-arm statute extends personal jurisdiction over nonresident defendants who take Delaware acts "through an agent."[104] Cohen signed

---

existence of the Delaware entities did not form an intrinsic part of the underlying alleged fraud"), *aff'd*, 993 A.2d 1042 (Del. 2010).

[101] Ans. Br. 57–60.

[102] Rainbow Medical and Fischer Behar dispute whether responding to a books and records demand is a Delaware act. Hr'g Tr. 50; *compare* D.I. 106 at 23–26 and D.I. 125 at 20–30, *with* Ans. Br. 49–68. I need not resolve this today.

[103] *See* Am. Compl. ¶¶ 127–29; Ans. Br. 62–65; *but see* Hr'g Tr. 19 ("[T]he loan agreements were, in fact, disclosed in a document that was produced.").

[104] 10 *Del. C.* § 3104(c); *Hercules*, 611 A.2d at 481–82.

the affidavit of completeness the 220 Plaintiffs requested for Nano-Retina's 220 Production.[105] He was Rainbow Medical's CFO, and provided financial services to Nano-Retina under the Operational Services Agreement and signed the affidavit indicating that role with Nano-Retina.[106] Plaintiffs theorize Cohen signed the affidavit as Rainbow Medical's agent, not as Nano-Retina's.[107]

While it is undisputed that Cohen wore two hats, "Delaware law respects corporate separateness."[108] Action Cohen took facially on behalf of Nano-Retina, in a contractually compensated role, is not automatically imputed to Rainbow Medical merely because Cohen was also a Rainbow Medical officer.[109] Plaintiffs have

---

[105] Am. Compl. ¶ 122 ("That affidavit was provided by none other than Yossi Cohen, Rainbow Medical's Chief Financial Officer. As the CFO of Rainbow Medical, Mr. Cohen is an agent of Rainbow Medical and any acts taken by Mr. Cohen are imputed to Rainbow Medical and Rainbow Medical's controller, Carlyle/Ki Cor[p].").

[106] Am. Compl. Ex. C § 2.1; *id.* at Ex. A ("Subject to the terms and conditions of the Operational Support Services Agreement, during the Operational Support Term the Company shall receive from Rainbow the following services: . . . ii. financial services (provided mainly by Rainbow's CFO)[.]"). Ans. Br. 30 n.8 ("In responding to Interrogatories, Mr. Cohen contends that he 'provides CFO services to Nano Retina as part of the Operational Services Support Agreement' and 'is not employed by Nano Retina.'" (quoting *id.* Ex. 2 at Interrogatory Answer No. 42)).

[107] Ans. Br. 60.

[108] *NAMA Hldgs., LLC v. Related WMC LLC*, 2014 WL 6436647, at *26 (Del. Ch. Nov. 17, 2014).

[109] *See EBG Hldgs. LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *14 (Del. Ch. Sept. 2, 2008) (rejecting plaintiff's argument that the Court should "imput[e] a specific contractual obligation of an agent to a principal for purposes of establishing personal jurisdiction over the principal").

offered nothing to substantiate their theory that Cohen was acting as Rainbow Medical's agent when he signed the Nano-Retina affidavit.[110] Plaintiffs have not met their burden in response to Rainbow Medical's challenge; at this stage, Nano-Retina's 220 Production cannot be imputed to Rainbow Medical to anchor its conspiracy against Nano-Retina.[111]

More fundamentally, Plaintiffs' claims do not arise out of a conspiracy to withhold documents, so that conspiracy cannot afford specific jurisdiction. While the missing loan documents may be evidence relating to Plaintiffs' claims, they are not the "source" of Plaintiffs' claims.[112] Rather, the conspirators' alleged wrongs occurred before and inspired the 220 demand.[113] After receiving the 220 Production

---

[110] *Mobile Diagnostic*, 972 A.2d at 802 (citing *Sprint Nextel*, 2008 WL 2737409, at *5).

[111] While it is possible that Plaintiffs might meet this burden in the future, jurisdictional discovery is unwarranted because the alleged act is not the source of Plaintiffs' claims. *Green Am. Recycling, LLC v. Clean Earth, Inc.*, 2021 WL 2211696, at *6 (Del. Super. June 1, 2021).

[112] *See LVI*, 2017 WL 3912632, at *5.

[113] *Compare* Am. Comp. ¶¶ 136–84 (alleging breaches of fiduciary duties in Counts I–VII for reasons other than the 220 Production), *with id.* ¶¶ 190–93 (asserting in Count IX that Fischer Behar aided and abetted those wrongs via the 220 Production) *and id.* ¶¶ 202–06 (asserting civil conspiracy in Count XII as a result of a conspiracy to "conceal[] the proper conversion of loans executed between Nano-Retina on the one hand and each of Carlyle and Rainbow Medical on the other hand . . . . includ[ing] withholding or destroying loan documents that contained similar terms but then certifying the collection and production in Delaware of the Company's documents"); *compare* Am. Comp. ¶ 9, *with* 220 Action D.I. 1, Ex. A at 3–6 (alleging eleven "serious concerns" that map on to the five categories of actions alleged in the Amended Complaint).

and affidavit of completeness, Plaintiffs dismissed the 220 Action and filed the plenary action.[114] Plaintiffs did not argue Nano-Retina's 220 Production was deficient as part of a conspiracy until their Amended Complaint, and did not assert it anchored jurisdiction until their Answering Brief.[115] On these facts, missing 220 documents do not serve as a jurisdictional hook for the very wrongs that inspired the demand. This Court does not have personal jurisdiction over Rainbow Medical under Section 3104 based on a conspiracy theory of personal jurisdiction.[116]

---

[114] 220 Action D.I. 6, Stipulation of Dismissal; *see generally* Compl.

[115] Am. Compl. ¶¶ 125–29, 147, 191, 206; Ans. Br. 49–50.

[116] Plaintiffs, in a conclusory manner, argue they have established conspiracy jurisdiction because the harm alleged creates a substantial effect on Nano-Retina in a manner that satisfies Section 3104(c)(3) and the third *Istituto Bancario* prong. Ans. Br. 49 (citing *Sample v. Morgan*, 935 A.2d 1046, 1058 n.44 (Del. Ch. 2007)). Even if Plaintiffs alleged a breach of fiduciary duty or harm to Nano-Retina's internal affairs related to the 220 Production, so that the injury is deemed to have occurred in Delaware, "[l]iterally, Delaware law requires both a tortious act within the State and an act or omission within this State." *Ramada Inns, Inc. v. Drinkhall*, 1984 WL 247023, at *2 (Del. Super. May 17, 1984); *accord Sample*, 935 A.2d at 1048 ("Thus, the scheme not only involved an act in Delaware, it also involved an injury in Delaware to the Delaware corporation."). "The dual reference to 'within the State' indicates that the draftsman intended that there be two separate events, each within the State." *Ramada Inns*, 1984 WL 247023, at *2). "Alleging a tortious injury occurred in Delaware is not enough to satisfy [Section 3104](c)(3). Delaware law requires plaintiffs also to establish that the out-of-state defendant committed an act or omission in Delaware." *Rotblut v. Terrapinn, Inc.*, 2016 WL 5539884, at *6 (Del. Super. Sept. 30, 2016); *Hartsel*, 2011 WL 2421003, at *14 (requiring "consistent with notions of due process, a factual showing that a tangible *act or omission* actually took place in Delaware" even if plaintiffs prove a Delaware situs of injury).

Plaintiffs also assert this Court has specific jurisdiction over Rainbow Medical because it is the alter ego of Nano-Retina. To prevail, Plaintiffs must show the following:

> (1) that the out-of-state defendant over whom jurisdiction is sought has no real separate identity from a defendant over whom jurisdiction is clear based on actual domicile or satisfaction of Delaware's long-arm statute; and (2) the existence of acts in Delaware which can be fairly imputed to the out-of-state defendant and which satisfy the long-arm statute and/or federal due process requirements.[117]

"It should be noted at the outset that persuading a Delaware Court to disregard the [corporate] entity is a difficult task."[118] Doing so under an alter ego theory "requires that the corporate structure cause fraud or similar injustice."[119] "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."[120]

The Amended Complaint falls well short of pleading the alter ego theory. There are no allegations that support an inference that Rainbow Medical is a "sham"

---

[117] *HMG/Courtland Props. Inc. v. Gray*, 729 A.2d 300, 308 (Del. Ch. Jan. 13, 1999).

[118] *Harco Nat. Ins. Co. v. Green Farms. Inc.*, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989).

[119] *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. 1996).

[120] *Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).

or that it "exist[s] for no other purpose than as a vehicle for fraud."[121]  To the contrary, Plaintiffs describe Rainbow Medical as "an Israeli company that invests in medical device companies, including Nano-Retina."[122]  Rainbow Medical invests in and supports several other companies separate and apart from Nano-Retina, as described above.[123]  Plaintiffs' limited allegation speculating that "Nano-Retina was effectively functioning as the alter-ego of Rainbow Medical and Carlyle" is not well pled.[124]  Plaintiffs argue in their Answering Brief that Rainbow Medical is Nano-Retina's alter ego because of their overlapping board members and management personnel, and Rainbow Medical's role "suppl[ying] Nano-Retina with clinical, regulation and business development support."[125]  This argument disregards both Rainbow Medical's contractual relationship with Nano-Retina and the entities' presumptive corporate separateness.[126]  As explained, Rainbow Medical has actual

---

[121] *See id.*

[122] Am. Compl. ¶ 4.

[123] *Id.*; Ans. Br. 9.

[124] Am. Compl. ¶ 76.

[125] Ans. Br. 69–71.

[126] Am. Compl. ¶¶ 9, 38, 40, 44, 50–54 (stating Rainbow Medical entered into several convertible loan agreements, an Inter-Company Services Agreement, and the Operational Services Agreement with Nano-Retina).  Though not dispositive, Rainbow Medical and Nano-Retina have separate principal places of business. *See, e.g.*, *EBG Hldgs.*, 2008 WL 4057745, at *13 ("[T]hey share offices, officers, and letterhead, and VG 109 is a wholly-owned subsidiary of NIBC, which is managed by NIBC.  In the absence of fraud and

Israeli operations.[127] Plaintiffs "must do more than plead that [Rainbow Medical] is [Nano-Retina's] alter ego . . . in conclusory fashion in order for the Court to disregard their separate legal existence."[128]

Plaintiffs dedicate one paragraph to their final argument that "the Court may exercise ancillary jurisdiction and adjudicate all claims as a matter of fairness and efficiency" "to the extent the Court determines that one of more of [Plaintiffs'] claims is not directly tied to the jurisdictional act[.]"[129] The Court may exercise its discretionary ancillary jurisdiction over a nonresident defendant on a claim where it would not have personal jurisdiction over that nonresident defendant, if that claim is sufficiently related to a different claim against the nonresident defendant over which the Court does have personal jurisdiction.[130] Ancillary jurisdiction is inapplicable

---

inequity, however, these facts do not warrant disregarding the corporate form."). *Compare* Am. Compl. Ex. E (listing Nano-Retina's "principal offices at 8 Maskit St., Herzliya, Israel"), *with* D.I. 9 ¶ 2 (listing Rainbow Medical's office as 85 Medinat Hayehuidm St. Business Park, G Building, 8th Floor Herzliya Pituach Israel).

[127] *See, e.g.*, Am. Compl. ¶¶ 38, 40; Am. Compl. Exs. A, C.

[128] *See MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010).

[129] Ans. Br. 67 (citing *Cap. Gp. Cos., Inc. v. Armour*, 2004 WL 2521295, at *4 (Del. Ch. Oct. 29, 2004)).

[130] *See, e.g.*, *Cap. Gp.*, 2004 WL 2521295, at *4 ("The court may exercise its discretion to litigate a claim for which personal jurisdiction would not otherwise exist where the claim is brought along with other claims for which jurisdiction does exist that are sufficiently related to that claim to warrant prosecution before a single tribunal." (collecting cases)).

here as this Court does not have personal jurisdiction over Rainbow Medical in any capacity.

Because there is no statutory basis for specific jurisdiction over Rainbow Medical, I need not reach the second question under the Due Process Clause of the Fourteenth Amendment.[131]

Finally, I decline to order jurisdictional discovery. "Where the plaintiff's claim is not clearly frivolous, the . . . court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden."[132] "[I]f the plaintiff identifies a non-frivolous nexus connecting the defendant to Delaware, a court 'should allow some discovery for the limited purpose of' confirming that link. But the word 'non-frivolous' is critical."[133] "If the proffered jurisdictional tie lacks a legal or factual basis, jurisdictional discovery on it will be denied as futile."[134]

---

[131] *See, e.g.*, *Abajian v. Kennedy*, 1992 WL 8794, at *9 (Del. Ch. Jan. 17, 1992) (declining to decide "whether sustaining jurisdiction over [a defendant] would violate due process requirements of the 14th Amendment" because the defendant was "not subject to personal jurisdiction under Delaware's long-arm statute"); *see also LVI*, 2017 WL 3912632, at *6 n.66 (same).

[132] *Hart Hldg.*, 593 A.2d at 539 (quoting *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3rd Cir. 1983)).

[133] *Green Am. Recycling*, 2021 WL 2211696, at *6 (collecting cases).

[134] *Id.* (emphasis omitted); *Hart Hldg.*, 593 A.2d at 539 ("Only where the facts alleged in the complaint make any claim of personal jurisdiction over defendant frivolous, might the trial court, in the exercise of its discretionary control over the discovery process, preclude reasonable discovery in aid of establishing personal jurisdiction.").

Though uncommon, courts do require plaintiffs to attempt to make a prima facie showing of personal jurisdiction when plaintiffs' "assertion of personal jurisdiction lacked the minimal level of plausibility needed to permit discovery to go forward."[135] Plaintiffs have not met this relatively light burden.[136] The lack of facts in Plaintiffs' complaint and Amended Complaint make any claim of personal jurisdiction over Rainbow Medical frivolous and unworthy of jurisdictional discovery.

### B. This Court Does Not Have Personal Jurisdiction Over Fischer Behar.

Plaintiffs press their conspiracy jurisdictional theory for Fischer Behar as well. Plaintiffs assert Fischer Behar's role assisting Nano-Retina in its 220 Production, and witnessing its affidavit of completeness, are Delaware acts by counsel in furtherance of a conspiracy.[137] For the reasons I have explained, the 220 Production fails to anchor Plaintiffs' alleged conspiracy in Delaware because it lacks a nexus to Plaintiffs' cause of action and does not form a source of the claim.[138]

---

[135] *Hart Hldg.*, 593 A.2d at 539–40.

[136] *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp., LLC*, 2010 WL 1838608, at *11–16 (Del. Ch. Apr. 28, 2010) ("[W]hen no evidentiary hearing has been held, the plaintiffs' burden is a relatively light one i.e., they must only make a prima facie showing that the exercise of personal jurisdiction is appropriate." (internal quotation marks omitted) (quoting *Cornerstone*, 2003 WL 1787959, at *3)).

[137] Ans. Br. 59–60; Hr'g Tr. 51, 127–28.

[138] *LVI*, 2017 WL 3912632, at *5 (internal quotation marks and emphasis omitted) (quoting *Sample*, 935 A.2d at 1057 n.43); *see also Chandler v. Ciccorico*, 2003 WL 21040185, at

Plaintiffs also allege Fischer Behar emailed with and wrote letters to Plaintiffs' Delaware counsel regarding the 220 Production, but communications with Delaware counsel, without more, are not jurisdictionally significant acts.[139]

Nor have Plaintiffs pled facts that support exercising personal jurisdiction over counsel as part of a conspiracy. In *Sample v. Morgan*, a "highly unusual case," this Court exercised personal jurisdiction over counsel defendants who "directly transacted business in Delaware for purposes of § 3104(c)(1)" because they "engaged in concerted activity . . . to entrench and enrich the Top Managers at the unfair expense of [the company] and its stockholders" by "prepar[ing] and sen[ding] the Certificate Amendment to CSC in Delaware for filing with the Secretary of State" as an element of the entrenchment scheme.[140] This is far from that case:

---

*11 (Del. Ch. May 3, 2003) (explaining that the cause of action must have a "nexus to the transaction of business that took place in the State").

[139] *Wooding v. Yeager*, 2010 WL 11712094, at *4 (D. Del. July 28, 2010) ("Contacts by telephone, standing alone, are generally insufficient to justify an exercise of personal jurisdiction consistent with due process."); *Agnes Carvel Estate v. Ross*, 566 F.Supp.2d 342, 349 (D. Del. 2008) (finding no minimum contacts despite Ross's phone calls to a Delaware attorney); *Comput. People*, 1999 WL 288119, at *8 ("[A]s a general matter telephone calls and an e-mail do not, in and of themselves, automatically constitute 'transacting business' within Delaware sufficient to invoke jurisdiction under § 3104(c)(1)." (collecting cases)).

[140] *See Sample*, 935 A.2d at 1057–58 (finding counsel engaged in a Delaware act under Section 3104(c)(1) through its "involvement . . . in arranging, either directly or through an agent . . . the filing of a corporate instrument in Delaware that facilitated transactions under challenge in litigation in this [C]ourt" (collecting cases)); *id.* at 1065 ("I reject the idea that denying the moving defendants' motion somehow will undermine the public policy of this

Plaintiffs allege only that Fischer Behar advised on the 220 Production and witnessed the affidavit of completeness. While Plaintiffs also allege Fischer Behar advised Nano-Retina "[i]n connection with various transactions or proposed transactions," it has not alleged "acts or omissions in this State" to satisfy a finding of conspiracy jurisdiction under Section 3104(c)(3).[141]

At bottom, Plaintiffs have failed to make a prima facie case that Fischer Behar committed a Delaware act that formed the source of Plaintiffs' claims. Consequently, this Court cannot exercise personal jurisdiction over Fischer Behar under Section 3104. I cannot exercise ancillary jurisdiction over Fischer Behar because this Court does not have personal jurisdiction over Fischer Behar in any capacity.[142] As above, I need not determine whether exercising personal jurisdiction over Fischer Behar would violate Due Process.[143] And in the absence of "factual allegations that suggest with reasonable particularity the possible existence of the

---

state, by causing law firms that provide advice to Delaware corporations to fear that they will be regularly hauled into court here. *This is a highly unusual case. In most fiduciary duty cases, it will be exceedingly difficult for plaintiffs to state an aiding and abetting claim against corporate counsel.*" (emphasis added)).

[141] Am. Compl. ¶¶ 30, 101, 113, 192; *Ramada Inns*, 1984 WL 247023, at *2; *Rotblut*, 2016 WL 5539884, at *6; *Hartsel*, 2011 WL 2421003, at *14; *see also Sample*, 935 A.2d at 1048 ("Thus, the scheme not only involved an act in Delaware, it also involved an injury in Delaware to the Delaware corporation.").

[142] *Cap. Gp.*, 2004 WL 2521295, at *4.

[143] *LVI*, 2017 WL 3912632, at *6 n.66; *Abajian*, 1992 WL 8794, at *9.

requisite contacts" between Fischer Behar and Delaware, I find that jurisdictional

discovery is futile.[144]

### III. CONCLUSION

The Motions are **GRANTED**. Plaintiffs and the defendants who answered

the Amended Complaint shall confer and submit a stipulated scheduling order and

discovery plan.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

---

[144] *Green Am. Recycling*, 2021 WL 2211696, at \*6; *Hart Hldg.*, 593 A.2d at 539.